AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

NOV 09 2023

MITCHELL R. ELFERS
CLERK OF COURT

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) | Case No. 23 - 2108 MR |
| IN THE MATTER OF THE SEARCH OF DIGITAL STORAGE MEDIA DEVICES ASSOCIATED WITH MICHAEL ANDREW MARTINEZ STORED AT THE FBI LAS CRUCES OFFICE | | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 242, 250 | Deprivation of Rights Under Color of Law |
| 18 U.S.C. § 1512(b)(3) | Witness Tampering |
| 18 U.S.C. § 1512(c)(1) | Obstruction of Justice |

The application is based on these facts:

See Attachment C.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Armida Maria Macmanus, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means).*

Date:  9 Nov 2023

_____
*Judge's signature*

City and state:  Las Cruces, New Mexico

Damian L. Martínez, U.S. Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

**Property to Be Searched**

The property to be searched includes the Devices listed below, which are currently located at the FBI Las Cruces Resident Agency, 2509 North Telshor Boulevard, Las Cruces, New Mexico, 88011. (Note: These photographs do not depict each item in its exact position or location found, for example, the items in the first photograph were not discovered or visible until the box and case were opened):

1. An SD Card and SIM Card recovered from Michael Martinez's residence, pictured below:



2. Two Data Stick Pro Flash Drives recovered from Michael Martinez's residence, pictured below:



3. An orange USB Drive, recovered from Michael Martinez's residence, pictured

below:



## ATTACHMENT B

### Particular Things to be Searched

All records, files, logs, or other digital information on the Devices described in Attachment A that relate to violations of federal law, specifically violations of 18 U.S.C. §§ 242, 250, Deprivation of Rights Under Color of Law, and 18 U.S.C. § 1512(b)(3), Witness Tampering, and 18 U.S.C. § 1512(c)(1), Obstruction of Justice, involving Michael Andrew Martinez, including information pertaining to the following matters:

      a.     Evidence or records of body worn camera and/or patrol vehicle camera video and audio footage;

      b.     Evidence or records of the planning or execution of the destruction of (1) a body worn camera and the footage contained therein and/or of (2) a patrol vehicle camera and the footage contained therein;

      c.     Evidence or records of sexual harassment, sexual assault, rape, and bondage of women;

      d.     Evidence or records of the planning and execution of (1) a sexual assault or other sexual misconduct, (2) the destruction of evidence relating to sexual assault or other sexual misconduct; and (3) attempts to influence witnesses to not report or believe accounts of sexual assault or other sexual misconduct;

      e.     Evidence or records of acts of sexual assault or other sexual misconduct committed by Michael Andrew Martinez;

      f.     Photographs or videos of sexual assaults or acts of sexual violence; and

1

g.       Evidence indicating Michael Andrew Martinez's state of mind as it relates to the crimes under investigation.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI shall deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| IN THE MATTER OF THE SEARCH OF DIGITAL STORAGE MEDIA DEVICES ASSOCIATED WITH MICHAEL ANDREW MARTINEZ STORED AT THE FBI LAS CRUCES OFFICE | Case No. 23 - 2108 mx |
|---|---|

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Armida Maria Macmanus, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of digital storage media devices (the "Devices"), described in the following paragraphs and in Attachment A, which are currently in the possession of the Federal Bureau of Investigation ("FBI") Albuquerque Field Office, Las Cruces Resident Agency, as described in Attachment A, and the extraction from that property of electronically stored information as described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since November 2005.  I am currently assigned as a Special Agent for the Albuquerque Division at the Las Cruces Resident Agency in Las Cruces, New Mexico.  I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including violations of Title 18 of the United States Code.  My experience as a Special Agent includes but is not limited to: conducting physical surveillance; interviewing witnesses; writing affidavits for and executing search warrants; working with undercover agents and informants; issuing administrative and federal grand jury subpoenas; and analyzing financial records,

telephone records, and data derived from the use of pen registers and trap and traces; and assisting in wiretap investigations. I have conducted or participated in investigations of subjects alleged to have violated 18 U.S.C. § 242, Deprivation of Rights Under Color of Law, and 18 U.S.C. § 1512, Witness Tampering and Obstruction of Justice.

3. The facts in this affidavit are based on the following: my own knowledge; knowledge obtained from other individuals during my participation in this investigation, including other FBI SAs, law enforcement officers, and witnesses; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. Much of the information in this affidavit has already been presented to this court in previous affidavits sworn be me.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 242, 250, Deprivation of Rights Under Color of Law, and 18 U.S.C. § 1512(b)(3), Witness Tampering, and 18 U.S.C. § 1512(c)(1), Obstruction of Justice, have been committed by Michael Andrew Martinez.

6. There is also probable cause to search the Devices described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes as further described in Attachment B.

## JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

2

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      On or about September 15, 2023, the FBI received information that Michael Andrew Martinez ("Martinez"), while serving in his capacity as a deputy with the Doña Ana Sheriff's Office ("DASO"), had sexually assaulted an adult female in custody (hereinafter "Victim") on April 30, 2023, thereby depriving the Victim of her civil rights. The FBI also received information that in the hours or days following the sexual assault, Martinez attempted to destroy evidence of the sexual assault, thereby obstructing justice. It was determined that the criminal conduct occurred in Las Cruces, New Mexico, within the District of New Mexico. I am the case agent assigned to the ongoing federal investigation.

9.      The initial investigation into Martinez's sexual misconduct first arose from Martinez himself calling a DASO sergeant (hereinafter "Witness 1") on May 2, 2023, claiming that he had just gone into his DASO patrol vehicle and noticed that the center console had been damaged and that his Global Positioning System ("GPS") device was laying on his dashboard. Martinez further claimed that his patrol vehicle's tactical radio and WatchGuard DVR system and WatchGuard monitor had been destroyed.[1] Based on our investigation, I know that the WatchGuard DVR system stores video footage from cameras inside the patrol vehicle, including, as pertinent here, video footage from the dash-mounted camera and the rear seat camera. During

---

[1] I conducted an online search of the WatchGuard DVR system and learned that it is an integrated evidence-gathering and archiving system. This system, or its comparable alternative, is used by the DASO to capture law enforcement events with cameras and recorders such as the Motorola Solutions 4RE® in-car video system (WatchGuard DVR system) with V300 body-worn camera.

this initial call, Martinez did not report that his DASO WatchGuard body worn DVR camera was missing. After receiving this call, Witness 1 responded to Martinez's residence in Doña Ana County to investigate.

10.     Upon arriving at Martinez's residence, Witness 1 spoke to Martinez, who reiterated his claims about noticing the damage to the interior of his patrol vehicle and added that it also appeared that someone had opened and rummaged through his glove compartment. Witness 1 inspected the patrol vehicle and observed that the tactical radio, the WatchGuard DVR system, and the WatchGuard monitor were either damaged or destroyed. Martinez was ordered to return the vehicle to the DASO, so that the recovery of stored data within the WatchGuard DVR system could be attempted and reviewed for possible evidence of the alleged robbery.

11.     The next day, May 3, 2023, Witness 1 contacted a lieutenant with the DASO Professional Standards Division (hereinafter "Witness 2"), who performs investigations of employees, due to the suspicious circumstances surrounding the DASO issued property that was damaged and missing from Martinez's patrol vehicle. Witness 1 told Witness 2 that his investigation revealed no forced entry into Martinez's patrol vehicle and that the only item missing from the vehicle was Martinez's WatchGuard body worn DVR camera. On May 11, 2023, the DASO pulled the WatchGuard DVR from Martinez's patrol unit, and, on June 22, 2023, sent it to WatchGuard (Motorola).

12.     That same day, May 3, 2023, Martinez submitted a memorandum to the DASO, stating that the day prior he had noticed and reported the damage to his DASO issued Harris Radio and WatchGuard DVR system. In his memorandum, Martinez also stated that two items were stolen from his patrol vehicle: a flashlight and his DASO WatchGuard body worn DVR camera.

4

13.     On August 21, 2023, WatchGuard (Motorola) sent the DASO a thumb drive

containing videos recovered from Martinez's damaged WatchGuard DVR.  On August 30, 2023,

Witness 2 reviewed the recovered videos, including one video of recovered footage from

Martinez's patrol vehicle's rear seat camera which showed Martinez sexually assaulting the

Victim while she was in Martinez's custody, handcuffed and restrained with a seatbelt inside the

prisoner compartment of Martinez's patrol vehicle.  Witness 2 notified his chain of command,

and on August 31, 2023, the DASO terminated Martinez's employment.  Approximately two

weeks later, the FBI was notified, and our federal investigation ensued.

14.     The investigation has thus far established that on April 30, 2023, while on duty as

a DASO deputy, Martinez, wearing his full uniform and patrolling in a DASO marked patrol

vehicle, responded to a car accident on Snow Road and Mesilla Dam Road in Doña Ana County,

New Mexico.  Martinez approached a car that had struck a tree.  Two females stood near the car,

one of which was the Victim, who was the registered owner of the vehicle.  Further investigation

revealed the Victim was the driver of the car during the accident.  As relevant to this search

warrant, this part of the incident was captured by Martinez's WatchGuard body worn DVR

camera.

15.     After speaking with Victim, Martinez detained Victim for Driving Under the

Influence of Intoxicating Liquor or Drugs (NM 66-8-102A) and Careless Driving (NM 66-8-

114A).  Martinez handcuffed Victim and placed her inside his patrol vehicle, a 2017 Chevrolet

Tahoe, bearing New Mexico license plate G99453.  Martinez read Victim the Implied Consent

Advisory, and she agreed to produce a breath sample.  Martinez then transported Victim to the

DASO headquarters where he administered a breathalyzer test, which produced a first sample of

0.04 and a second sample that was insufficient.  Victim remained inside a holding cell while

Martinez completed requisite paperwork. As relevant to this search warrant, this part of the incident was also captured by Martinez's WatchGuard body worn DVR camera. After administering the breathalyzer test and completing the paperwork, Martinez's WatchGuard body worn DVR camera captured Martinez walk back out to his patrol vehicle, open his driver side door, and say "Deactivate." Martinez's WatchGuard body worn DVR camera then went black, apparently deactivating. There is no body worn camera footage for the rest of the time Victim is in Martinez's care and custody.

16.     Martinez then placed Victim, who remained handcuffed, back inside his patrol vehicle and transported Victim to the Mountain View Medical Center in Las Cruces, New Mexico, to obtain a medical clearance. Once said medical clearance was obtained, Martinez put Victim, who was still handcuffed with her hands restrained behind her back, back into his patrol vehicle. Martinez then secured Victim's seatbelt, further restraining her, before sexually assaulting Victim. After sexually assaulting Victim, Martinez transported her to the Doña Ana County Detention Center and booked her into the facility.

17.     As part of our investigation, I reviewed video recovered from Martinez's patrol vehicle's WatchGuard DVR. The following is a summary of the video footage capturing Martinez's sexual assault of Victim. The video footage begins with a banner that reads, "Dep. Michael Martinez 04-30-2023 @0335 Hrs. Backseat.mp4." The video footage next captures Victim seated and seat-belted in the caged prisoner compartment of Martinez's patrol vehicle. Victim is wearing a light-colored hoodie and shorts and her hands are behind her back, apparently handcuffed. Martinez and Victim engage in casual conversation during the transport. After approximately 15 minutes of recorded video footage, Martinez stops his patrol vehicle (based on our investigation, I know Martinez stopped at the Mountain View Medical Center),

6

opens the rear passenger side door, and releases Victim's seatbelt. Victim gets out of the vehicle and Martinez shuts the door. A little over two hours later, video footage captures Martinez's patrol vehicle's rear passenger side door reopen, and Victim gets back inside the caged prisoner compartment. Victim's hands are still behind her back, apparently handcuffed.

18.     Video footage then captures Martinez ask Victim if she is ok and she appears to respond, "Yes, Sir," as Martinez places his right hand on Victim's upper right thigh. Martinez then places his left hand briefly on the inside of Victim's upper right thigh area. Seconds later, Martinez fastens Victim's seatbelt—further restraining her—and places his hand again on her upper right thigh between her legs for a moment. Martinez then moves Victim's thighs apart and places his hand on or near her vagina. Victim appears minimally responsive and stares at Martinez as Martinez proceeds to squeeze Victim's upper right thigh. Martinez continues his sexual assault of Victim, placing his right hand apparently up and inside Victim's shorts on, near, or penetrating Victim's vagina. Martinez then three times moves his hand in a continuous rubbing motion while it is inside Victim's shorts and on, near, or penetrating her vagina, before pulling his hand back and squeezing her upper right thigh another time. Not finished sexually assaulting Victim, Martinez moves the seatbelt positioned across Victim's chest and squeezes her left breast (over her hoodie), before unzipping her hoodie, placing his right hand inside Victim's hoodie, and rubbing and squeezing Victim's left breast for several seconds. After groping Victim's breast, Martinez steps away from Victim and shuts the patrol vehicle door. Victim then appears to look up at the vehicle's rear seat camera several times.

19.     Following my review of this video, I interviewed Victim, who corroborated our information that on April 30, 2023, Martinez arrested her for driving while intoxicated and, after arresting and transporting her, sexually assaulted her while she was in his custody. Victim also

7

reported that following the sexual assault, Martinez, on at least two occasions, on May 2, 2023, and May 6, 2023, called her cellphone. Victim recorded these calls and saved the recordings. Victim provided FBI with the recordings, which I reviewed.

20.     The following is a summary of the recorded call which Victim reported receiving on May 2, 2023: The caller, calling from a blocked number, identifies himself as "Michael." When Victim says, "Who is Michael?" the caller responds, "We met the other day." Victim again says that she does not know who is calling. The caller responds, "I went by your work, but you're not there." Victim asks how the caller knows where she works and he simply replies, "You work at the weed shop." Victim tells the caller that she is not good with names and is "concerned." The caller responds that he works for the "Sheriff's Department." Victim asks if the caller is calling just for fun, and he says that he is calling to see what she is doing and to tell her that the charges will be dismissed. Victim asks the caller if he is trying to hang out and he tells her to call him when she is alone. Victim says she can be alone later if he wants to hang out and they talk about timing. The caller then asks Victim step outside and asks her whether anyone can hear him. She tells him that no one can hear him, and he again tells her that the charges will be dismissed. The caller then asks Victim what she is thinking about, and she responds, "I'm thinking how you did that." The caller responds, "Oh, I'm just gonna dismiss that." Victim asks whether he can just do that, and he responds he can. Victim asks, "Oh, you're above the law?" The caller says he is not and changes the topic to asking Victim what she said she is wearing. The call ends with Martinez telling Victim, "Just don't tell anybody," and to just go to court, do what they say, and the charges will be dismissed in 30 days.

21.     The following is a summary of the recorded call which Victim reported receiving on May 6, 2023: The caller, again calling from a blocked number, identifies himself as

8

"Martinez." Victim asks the caller to repeat himself and the caller responds, "Martinez, who's this? Victim replies, "Who is this?" and the call ends.

22.     Frightened that Martinez kept calling her from blocked numbers, Victim set her phone to not accept calls from private numbers. Victim has not spoken to or seen Martinez since May 6, 2023.

23.     In addition to feeling unsafe due to the repeated calls from blocked numbers, Victim also felt harassed and unsafe due to the caller's statement that he went to her workplace. Victim reported that following the sexual assault and Martinez's calls, she stopped working at her place of employment, which she said was Monster House Dispensary on Solano Drive, and stopped sleeping at her residence.

24.     In addition to obtaining and reviewing the recovered footage of Martinez sexually assaulting Victim, during our investigation the FBI also obtained and reviewed additional recovered footage from Martinez's patrol vehicle's WatchGuard DVR System. The recovered footage was dated April 30, 2023, and at the times listed on the footage, Martinez was off duty. In the footage, loud crashing sounds can be heard, and Martinez can be observed walking back and forth several times from his residence to his patrol vehicle. The last video, recorded at 9:51 p.m. that evening, shows a black screen and audio. This could indicate the WatchGuard DVR System was in the process of being damaged while the final video was being recorded. Based on our investigation, I believe this video showed Martinez' attempt to damage the WatchGuard DVR System in his patrol vehicle, to conceal his sexual assault of Victim earlier that day.

25.     In addition to reviewing this additional recovered footage, I interviewed a sergeant from the New Mexico State Police ("NMSP") (hereinafter "Witness 4"), who told me that in reviewing the recovered footage of Martinez sexually assaulting Victim, he observed

9

Martinez wearing his DASO issued body worn DVR camera.[2]  Witness 4 opined that Martinez

may have purposely unplugged the camera lens attachment on his body worn camera during the

sexual assault of Victim with the intent to prevent the body worn camera from properly

functioning.  I then spoke with another DASO officer (hereinafter "Witness 5") who explained

that the DASO body worn DVR camera must be activated with a push of a button to function.

He added that the body worn DVR camera has a lens attachment which, when connected and

activated, allows for a recording to take place.  Witness 5 reviewed the video of Martinez

sexually assaulting Victim and stated that he believed Martinez's body worn camera was on

during the assault because he observed a green light on the camera.  Witness 5, however, pointed

out that the red flashing light feature on the camera indicated that while the device was turned

on, it may not have been recording because the camera lens attachment was detached.  Witness 5

opined that Martinez intentionally disconnected the lens attachment of his body worn camera so

that the body worn camera would not function properly and thus would not record the sexual

assault.

26.     On November 1, 2023, I spoke with Witness 2, the lieutenant with the DASO

Professional Standards Division, who told me that DASO issued WatchGuard body worn DVR

cameras and WatchGuard DVR systems do not respond to verbal commands to deactivate.

However, in accordance with DASO policy and procedures regarding body worn cameras,

DASO deputies are required to verbally state out loud that they have deactivated their body worn

camera so that the deactivation is memorialized as intentional, as opposed to the deactivation

---

[2] This is a different camera than the WatchGuard DVR system that was in Martinez's marked patrol
vehicle.

being accidental.  Witness 2 also told me that DASO deputies are only meant to deactivate their body worn cameras at either the end of a service call or their contact with the public.  Witness 2 also told me that he believed DASO configured their body worn cameras to have record-after-the-fact capabilities whose recordings are retrievable by WatchGuard (Motorola).

27.     I obtained and reviewed a copy of the DASO's Policies and Procedures on "In-Car Audio/Video/Body Worn." In that manual, I read that body worn cameras should "be activated in conjunction with official law enforcement and court duties" and should "remain activated until the conclusion of the law enforcement or investigative encounter, in order to ensure the integrity of the recording." Thus, based on our investigation, I believe that Martinez had a duty to keep his WatchGuard body worn DVR camera on and recording during the entire time that Victim was in his custody.

28.     On September 19, 2023, United States Magistrate Judge Damian L. Martinez issued both a federal arrest warrant for Martinez and a federal premises search warrant for the search of Martinez's residence, 6386 Zorro Trail, Las Cruces, New Mexico, and the seizure of electronic devices belonging to Martinez found therein.  (*See* Case Number 23-1817MR-search warrant; Case Number 23-1430MJ-arrest warrant).

29.     The following day, September 20, 2023, the FBI executed the federal arrest warrant and arrested Martinez without incident at the DASO headquarters.  During Martinez's arrest, an Apple iPhone was located on his person and seized pursuant to the search warrant.  In addition, during Martinez's arrest, I spoke with Martinez and asked him questions unrelated to the investigation.  After hearing his voice, I confirmed that he was the caller of the phone calls placed to Victim from blocked numbers.

30.    Pursuant to the terms of the issued federal search warrant for Martinez's cellular phone, after locating and seizing Martinez's Apple iPhone, I used the iPhone's facial recognition feature to open the iPhone so that the FBI could later perform a digital forensic extraction of the phone's contents.

31.    Within days of seizure, the FBI CART (Computer Analysis Response Team) conducted a forensic extraction of Martinez's Apple iPhone.  On October 19, 2023, I reviewed portions of the forensic extraction of Martinez's iPhone.  During my review, I saw that on May 1, 2023, one day after Martinez detained and sexually assaulted Victim, the user of the iPhone conducted a web search for "Monster House Dispensary."  I recognized "Monster House" as the place where Victim told me she worked before the sexual assault.  I also recalled hearing on the recorded call, which Victim reported receiving on May 2, 2023, the caller telling Victim that he went to her work but that she was not there and that he knew she worked at the weed shop.  I conducted a web search of Monster House Dispensary and verified that Monster House Dispensary is located on Solano Drive in Las Cruces, New Mexico.

32.    During my review, I also found that on May 2, 2023, at 3:19 p.m., Martinez's extraction timeline listed a phone number that I know is assigned to Victim's cellular phone. This finding corroborated Victim's statement to me that Martinez contacted Victim via a blocked phone number on May 2, 2023.

33.    SA Sean Macmanus, who is assigned to the Cellular Analysis Survey Team (CAST), then served a federal grand jury subpoena to Verizon for tolls records from the phone number associated with Martinez's Apple iPhone.  After receiving and reviewing the results, he told me he saw that the toll records corroborated Victim's account.  Specifically, SA Sean Macmanus observed that on May 2, 2023, the phone number associated with Martinez's iPhone

12

called Victim's phone twice, once at 3:42 p.m. and once at 3:44 p.m. On both calls, the user dialed *67 to hide their phone number. On May 6, 2023, the phone number associated with Martinez's iPhone again called Victim's phone at 10:07 p.m. Again, the user dialed *67 to hide their phone number.

34.     In addition, in reviewing the forensic extraction of Martinez's Apple iPhone, I also uncovered records revealing that the user of the iPhone conducted a web search on May 4, 2023, at 1:44 a.m. for https://law.justia.com/codes/new-mexico/2018/chapter-30/article-9/section-30-9-12. I conducted a web search of this website and found that it corresponds to the 2018 New Mexico Criminal Laws. Specifically, the site is for the New Mexico Sexual Offenses/ Criminal Sexual Conduct. This search was conducted by the user of the iPhone approximately four days after Martinez's sexual assault of the Victim and approximately two days after Martinez falsely reported that his DASO issued body worn DVR camera was missing and that an unknown person had damaged his DASO patrol vehicle's WatchGuard DVR system.

35.     In addition, in reviewing the forensic extraction of Martinez's Apple iPhone, I also uncovered records revealing that the user of the Apple iPhone conducted numerous web searches relating to the destruction and retention of a Watchguard hard drive, including: "will water ruin a hard drive;" "delete data from hard drive permanently;" "deleting data from watchguard harddrive [sic];" "hard drive recovery;" and "data on watchguard."

36.     Further, in reviewing the forensic extraction of Martinez's Apple iPhone, I also uncovered records revealing that the user of the iPhone conducted numerous web searches in September 2023 for police officers in New Mexico who had been criminally charged with committing offenses relating to child sex abuse and child pornography.

13

37.     On September 20, 2023, while I executed the federal arrest warrant and arrested Martinez, FBI SA David Gabriel led an FBI search team and executed the federal premises search warrant of Martinez's residence, 6386 Zorro Trail, Las Cruces, NM, for evidence of violations of 18 U.S.C. §§ 242, 250, 1512.  During the search, law enforcement agents recovered the Devices described in Attachment A, and listed directly below, for which I am seeking authorization to search via this warrant, as I believe there is sufficient probable cause to establish that the following seized digital storage media devices may contain evidence of Martinez's crimes, in particular, digital files containing video recordings from Martinez's missing DASO issued WatchGuard body worn DVR camera and/or additional footage from his DASO issued WatchGuard DVR system:

a.   The first set of items, an SD Card and a Samsung SIM card, was found in the office of Martinez's residence, located within boxes and cases for body worn camera systems.  (*See* First Photo in Attachment A for context).

b.   The second set of items, a pair of Data Stick Pro flash drives, was found in a gun safe in Martinez's garage, which Martinez's wife Ellen Stafford ("Stafford"), told SA Gabriel belonged to Martinez.  Stafford also told SA Gabriel that only Martinez accesses the safe.  One flash drive was labeled "Martinez" and the other was in an envelope labeled "Martinez," leading SA Gabriel to believe these items belong to Martinez.  (*See* Second and Third Photos in Attachment A for context.).

c.   The last item, an orange USB drive, was in Martinez and Stafford's shared bedroom.  SA Gabriel showed the device to Stafford, who told him it did not belong to her.  He asked her if any other adults had access to this device, or if she believed it was Martinez's device.  Stafford stated that no other adults had access

14

to the device and that she believed it probably belonged to Martinez. (*See* Fourth Photo in Attachment A for context).

38.     As set forth above in paragraph 1, FBI seized the Devices from Martinez's residence. The Devices were transported to, and are currently located at, the Albuquerque Field Office, Las Cruces Resident Agency, which is located at 2509 North Telshor Boulevard, Las Cruces, New Mexico, 88011, within the District of New Mexico.

39.     Based on my training and experience, I know that that the purpose of police-issued body worn cameras and patrol vehicle (internal, dashboard, etc.) cameras is to record video and audio of police interactions and encounters with civilians, both for the safety of the officer and the civilians, and for the integrity of the criminal justice process. I know from talking to local law enforcement officers associated with this investigation that these devices store recorded video and audio data in a digital format for later storage and review. Such data comprises records of police activity. I also know that digital files, like audio and video files, can easily be downloaded and duplicated on computer systems and stored on digital storage media devices like the types seized from Martinez's house during the execution of the federal premises search warrant.

40.     I also know that individuals who commit sexual assaults sometimes maintain "trophies" or mementos of their crimes for a variety of personal reasons, to include their further sexual gratification. Given that these digital storage media devices were found in Martinez's residence (with one set stored in a storage container for a body worn camera and another set stored in a gun safe) and that these devices do not belong to anyone else residing at Martinez's residence, I believe there is probable cause to believe that Martinez may have maintained evidence related and relevant to his charged violations of 18 U.S.C. §§ 242, 250, 1512. This

15

appears particularly likely given that FBI SAs have already found further evidence of Martinez's violations of 18 U.S.C. §§ 242, 250, 1512 on a separate electronic device (the Apple iPhone) belonging to Martinez that was seized, pursuant to a federal search warrant, on September 20, 2023.

CONCLUSION

41.     *Manner of execution.*  Because this warrant seeks only permission to examine the Devices already in FBI's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

42.     Based on the foregoing, I request that the Court issue the proposed search warrant authorizing the examination of the Devices described in Attachment A, which are currently stored at the FBI Las Cruces Resident Agency, to seek the items described in Attachment B.

Respectfully submitted,

_____
Armida Maria Macmanus
Special Agent
Federal Bureau of Investigation

Sworn telephonically, signed remotely, and transmitted by email on
_9 Nov._____, 2023

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE